UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| KEITH L. SMITH | CIVIL ACTION |
| VERSUS | NO. 06-953 |
| FRANCIS J. HARVEY, SECRETARY OF THE ARMY | MAG. JUDGE WILKINSON |

### ORDER AND REASONS ON MOTION

Plaintiff, Keith L. Smith, filed this action alleging that defendant, Francis J. Harvey, Secretary of the Army ("the Secretary"), retaliated against him, discriminated against him on the basis of his race and created a hostile work environment, all in violation of Title VII. 43 U.S.C. § 2000e-16. The Secretary filed a motion for summary judgment, supported by certified copies of exhibits and excerpts from plaintiff's deposition. Record Doc. No. 34. He subsequently received leave to file a supplemental memorandum to correct some typographical errors and to include a citation to a recently decided Fifth Circuit case. Record Doc. Nos. 35, 36, 37. The Secretary filed a 25-page memorandum in support of his motion for summary judgment, which incorporates by reference 21 pages of his previously filed memorandum in support of motion to dismiss, Record Doc. No. 24, and five pages of his previously filed reply memorandum in support of his motion to dismiss. Record Doc. No. 28.

Plaintiff received leave to file a late opposition memorandum. Record Doc. Nos. 38, 39, 40. Although Smith did not attach any evidence[1] to his memorandum, it appears that he intends to refer in that memorandum to the evidence that he had previously attached to his memorandum in opposition to defendant's motion to dismiss. Record Doc. No. 25. I have considered that evidence in opposition to the instant motion.

Having considered the complaint, the record, the submissions of the parties and the applicable law, and for the following reasons, **IT IS ORDERED** that defendant's motion for summary judgment is **GRANTED**.

I.   THE UNDISPUTED FACTS

The following facts are undisputed, solely for purposes of the pending motion for summary judgment.

Smith, an African-American, works for the United States Army Corps of Engineers in New Orleans as a contract price-cost analyst. At the time of the relevant events, he was supervised by Cynthia Nicholas, who was in turn supervised by Audrey Tilden. Both are white.

---

[1]Plaintiff attached to his opposition his own affidavit dated February 16, 2007. However, the affidavit consists almost entirely of incomplete sentences, rendering it useless as evidence. Because this affidavit was obviously copied (but only partially) from Smith's prior affidavit attached to his opposition to defendant's motion to dismiss, I have considered the prior affidavit rather than the current one.

On January 23, 2004, Smith consulted an EEO counselor and later brought a formal complaint of race discrimination against Nicholas and Tilden concerning events not specifically related to the events underlying the instant lawsuit. That charge was still pending during the time period relevant to the instant lawsuit. Defendant's Exh. 3.

In May 2004, Tilden directed Nicholas to review the long-distance telephone charges in Nicholas's division from the previous month for any irregularities or excessive charges. Nicholas found that Smith's long-distance telephone bill for April 2004 was more than $217 for 89 calls totaling almost five hours. Defendant's Exh. 2, Transcript of April 26, 2005 EEO investigator's fact-finding conference, testimony of Kevin Smith at p.16; testimony of Cynthia Nicholas at pp. 55-56, 65-66. The telephone bills for the other employees in plaintiff's division and branch were between $25 and $50 that month. Defendant's Exh. 2, at Smith testimony at pp. 20, 40; Nicholas testimony at pp. 54-55. Smith was aware of the Army Corps's regulation that long-distance services were for official use only, employees were discouraged from using long-distance services unless the call was "absolutely necessary" and the matter was so urgent that it could not be handled by other means of communication. He knew that long-distance bills would be monitored and supervisors would review the bills.

When Nicholas saw plaintiff's April 2004 bill, she advised Tilden, who suggested that she ask Smith for an explanation. When Nicholas did so on May 27, 2004, Smith

told her only that all of the calls were business-related. Nicholas requested further information, which Smith did not provide.

On June 3, 2004, Nicholas e-mailed Smith and again requested further explanation why his telephone charges had been so high. Smith replied that the calls were business-related and provided a list of the cities and agencies where the calls had been directed.

On June 10, 2004, Nicholas sent a memorandum to Smith listing nine specific calls and asking that Smith provide a written explanation, including the name of the person called, the relevant business matter and issues discussed, and the length of the call. On June 14, 2004, Smith provided the requested information. No further action, inquiry or discipline concerning the telephone calls occurred after that date. Defendant's Exh. 1, EEO investigative file, e-mail messages at pp. 180-81, 183-84, 186-93; Defendant's Exh. 4, plaintiff's Answer to Interrogatory No. 2; Defendant's Exh. 2, Smith testimony at pp. 16, 23-24, 42; Nicholas testimony at pp. 54-56, 60, 63, 65-66, 78.

Tilden noticed Smith on three different occasions loudly discussing non-work related matters with Frederick Walker Pitts in Pitts's office, during working hours and within the hearing of other employees. After the third instance, Tilden spoke to Branch Chief Charles Zammit, who was her subordinate and Pitts's supervisor. She suggested that he might want to mention to Pitts that, if Pitts wanted to continue discussing Smith's personal matters, it was improper and unprofessional to do so in the office, it was a waste

of government time and they should do so "outside of the office environment because it's there for everybody to hear." Defendant's Exh. 2, testimony of Audrey Tilden at pp. 89-90, 101-02.

Smith admitted that he engaged in discussions with Pitts once or twice a week about "what was happening with me . . . [,] the general climate of the office[,] . . . the sexism in the office with respect to preferential treatment perceived by the males [and] . . . the difference in treatment that blacks received in our office." Defendant's Exh. 8, deposition of Keith Smith, at pp. 77-79.

Zammit observed Pitts and Smith discussing non-work-related matters in the office on two occasions. Zammit felt that the conversations between Pitts and Smith were disruptive to other employees in the area. Defendant's Exh. 2, testimony of Charles Zammit, at pp. 176, 201. Tilden's comments and his own observations of the conversations between Pitts and Smith caused Zammit to speak with Pitts. Zammit told Pitts that it was not "in his best interest to get any more involved than necessary in Mr. Smith's business" and that, while he did not object to Pitts speaking to Smith outside of the work area, he asked Pitts to minimize his non-work-related conversations with Smith in the office. Defendant's Exh. 2, testimony of Zammit, at pp. 175-77, 182-83.

On June 23, 2004, Pitts e-mailed a message to Smith, stating that Zammit had warned Pitts to stay away from Smith because "something bad was going to" happen to

Smith. Defendant's Exh. 1, Army EEO investigative file, e-mail from Pitts to Smith dated June 23, 2004; Defendant's Exh. 2, testimony of Smith at p.27.

Zammit did not recall using these words and he testified that he would have had no way of knowing whether anything bad was going to happen to Smith. Defendant's Exh. 8, Zammit testimony at pp.175, 178-79.

Smith reported Pitts's communication to an EEO counselor and to his union representative, Greg DeBose, and asked for a meeting with Michael Zack, the acting director/executive officer of the Army Corps. Zack met with Smith and DeBose around July 16, 2004. Zack concluded that Zammit's comments were not a physical, violent threat that would have required him to notify outside law enforcement personnel. Defendant's Exh. 5, declaration under penalty of perjury of Michael Zack. Smith himself did not perceive the comments as a physical threat, but he wanted Zack to fire Zammit. Defendant's Exh. 8, Smith deposition, at pp. 75-77.

Nothing "bad" ever occurred to Smith following this incident. Pitts continued to talk to him. Plaintiff was not suspended, reprimanded, warned, demoted or otherwise disciplined in any way. Defendant's Exh. 2, testimony of Smith, at pp. 45, 47.

II.     ANALYSIS

   A.     Standard of Review for Summary Judgment Motions

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact, but it is not required to negate elements of the nonmoving party's case. Capitol Indem. Corp. v. United States, 452 F.3d 428, 430 (5th Cir. 2006) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)); Edwards v. Your Credit, Inc., 148 F.3d 427, 431 (5th Cir. 1998) (citing Celotex, 477 U.S. at 323).

A fact is "material" if its resolution in favor of one party might affect the outcome of the action under governing law. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). No genuine issue of material fact exists if a rational trier of fact could not find for the nonmoving party based on the evidence presented. National Ass'n of Gov't Employees v. City Pub. Serv. Bd., 40 F.3d 698, 712 (5th Cir. 1994).

To withstand a properly supported motion, the nonmoving party who bears the burden of proof at trial must come forward with evidence to support the essential

elements of its claim. Id. (citing Celotex, 477 U.S. at 321-23). "[A] complete failure of proof concerning an essential element of the nonmoving party's case renders all other facts immaterial." Celotex, 477 U.S. at 323; accord Capitol Indem. Corp., 452 F.3d at 430.

"Factual controversies are construed in the light most favorable to the nonmovant, but only if both parties have introduced evidence showing that an actual controversy exists." Edwards, 148 F.3d at 432. "'We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts.'" Badon v. R J R Nabisco Inc., 224 F.3d 382, 394 (5th Cir. 2000) (quoting Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (emphasis in original)). "Conclusory allegations unsupported by specific facts . . . will not prevent the award of summary judgment; 'the plaintiff [can]not rest on his allegations . . . to get to a jury without any "significant probative evidence tending to support the complaint."'" National Ass'n of Gov't Employees, 40 F.3d at 713 (quoting Anderson, 477 U.S. at 249).

"Moreover, the nonmoving party's burden is not affected by the type of case; summary judgment is appropriate in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." Little, 37 F.3d at 1075 (quotation omitted) (emphasis in original).

### B. Plaintiff's Retaliation Claim

In a Title VII case, plaintiff has the initial burden of proving by a preponderance of the evidence a prima facie case of discrimination or retaliation. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973) (race discrimination); Baker v. American Airlines, Inc., 430 F.3d 750, 754 (5th Cir. 2005) (retaliation).

Defendant contends that Smith fails to establish a prima facie case of retaliation under the specific provision of Title VII that gives federal government employees a cause of action for retaliation.

> To establish a prima facie case for retaliation, an employee must show 1) that she engaged in a protected activity; 2) that an adverse employment action occurred; and 3) that a causal link existed between the protected activity and the adverse action. If the employee sets out a prima facie case, the burden shifts to the employer to state a legitimate non-retaliatory reason for its action. After the employer states the reason, any presumption of retaliation drops from the case and the burden shifts back to the employee to show that the stated reason is actually a pretext for retaliation.

Baker, 430 F.3d at 754 (quotation omitted).

The Secretary argues that the United States Supreme Court's recent decision in Burlington No. & Santa Fe Ry. v. White, 126 S. Ct. 2405 (2006), applies only to private sector employees, and not to federal government employees, because the cause of action for retaliation for federal employees arises out of a separate provision of Title VII, 42

U.S.C. § 2000e-16(a),[2] which has different language than the provision for the private sector employees' cause of action. Id. § 2000e-3(a).[3]

The Supreme Court in White, which was a private sector case, resolved a circuit split and clarified the standard for bringing a retaliation claim under Section 2000e-3(a). The Court held that "an adverse employment action," the second prong of a prima facie case, "covers those (and only those) employer actions that would have been materially adverse to a reasonable employee or job applicant. . . . [T]hat means that the employer's actions must be harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." Id. at 2409 (emphasis added).

In articulating this standard, the Supreme Court specifically overruled the Fifth Circuit's stricter standard, which had been established in Mattern v. Eastman Kodak Co., 104 F.3d 702 (5th Cir. 1997). The Fifth Circuit held in Mattern that a private employee

---

[2]"All personnel actions affecting employees or applicants for employment . . . in military departments . . . , in executive agencies . . . , in the United States Postal Service and the Postal Regulatory Commission, . . . shall be made free from any discrimination based on race, color, religion, sex, or national origin." Id. (emphasis added).

[3]

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

Id.

who alleges retaliation must demonstrate an "ultimate employment decision," such as "hiring, granting leave, discharging, promoting, and compensating." Id. at 707.

The Fifth Circuit in Mattern had imported that standard from an earlier, government sector case. Dollis v. Rubin, 77 F.3d 777 (5th Cir. 1995). However, the Supreme Court in White did not mention Dollis. Thus, the Secretary contends that the "ultimate employment decision" standard of Dollis survives White and continues to apply to federal government employees, such as Smith.[4]

The Secretary argues alternatively that, even if the more lenient, White standard applies, Smith fails to make out a prima facie case under that standard.

I need not decide which standard applies because plaintiff's evidence fails to establish a prima facie case of retaliation even under the more lenient standard. Smith has provided evidence of only two incidents of alleged retaliation: (1) when Nicholas questioned him about his telephone bill and (2) when Zammit told Pitts to stay away from Smith because "something bad was going to" happen to Smith and Zack failed to take any disciplinary action against Zammit.

Clearly, the actions of which Smith complains do not rise to the level of "hiring, granting leave, discharging, promoting, and compensating," as Dollis would require.

---

[4]The Secretary concedes that the District of Columbia Circuit has rejected this argument in Rochon v. Gonzales, 438 F.3d 1211, 1219 (D.C. Cir. 2006), but argues that the District of Columbia Circuit's reasoning is incorrect.

Even under the more lenient, White standard, the actions of Nicholas, Zammit and Zack were not so harmful that they could well dissuade a reasonable worker from making or supporting a charge of discrimination.

Nicholas asked plaintiff to explain his long-distance telephone bill for April 2004, which was grossly excessive when compared to those of his co-workers. Smith knew of the regulation concerning limiting the use of long-distance telephone calls and that a supervisor was responsible for monitoring that use.

When Smith responded merely that the calls were business-related, Nicholas asked him for a better explanation of why the costs were so high. When he responded only by giving her a list of the cities and agencies called, she repeated her request for a more complete explanation. When he did not respond at all to that e-mail, she sent him a written memorandum, stating that his explanation was insufficient and asking that he provide a specific, written description of only nine of his 89 calls for the month. After he complied, the matter was dropped. The reason for the repeated requests was Smith's own failures to respond in a responsible manner. No reasonable worker would perceive this innocuous, routine business request as chilling his ability to make a discrimination claim.

As to the Pitts/Zammit conversation, Zammit responded to the concern of his own supervisor, Tilden, and to his own observations that Smith's conversations with Pitts in

the office regarding Smith's personal matters were disruptive to other employees and wasteful of Pitts's work time. He asked Pitts to minimize his non-work-related conversations with Smith in the office.

In an e-mail message, Pitts reported to Smith that Zammit had warned Pitts to stay away from Smith because "something bad was going to" happen to Smith. Although Zammit denied that he used words like those or that he would have had any way of knowing whether something bad was going to happen to Smith, this fact dispute must be resolved in Smith's favor, solely for purposes of the instant motion for summary judgment. However, there is no evidence that anything "bad," such as disciplinary or other action, happened to Smith.

Neither Zammit's comment nor Zack's response was so harmful that it could well dissuade a reasonable worker from making or supporting a charge of discrimination. As Smith himself admitted, Zack correctly noted that the threat was not physical. Defendant's Exh. 8, Smith deposition, at pp. 75-77. Zack has stated, without any contradictory evidence from plaintiff, that he decided not to take any action because the threat was not physical, the comments had been made several weeks before Smith notified him, nothing violent had occurred and, "finally, and most importantly, Smith had already raised the issue of the Zammit comment with an EEO counselor . . . and had elected to resolve the Zammit comment through the EEO, which would fully investigate

whether the Zammit comment resulted in harm to Smith's job status or working environment." Defendant's Exh. 5, Zack declaration.

Plaintiff's burden in responding to defendant's motion is to come forward with evidence to support the essential elements of his claim. National Ass'n of Gov't Employees, 40 F.3d at 712 (citing Celotex, 477 U.S. at 321-23). The only evidence that Smith has submitted is the series of correspondence between himself and Nicholas concerning the long-distance telephone charges and the e-mail from Pitts repeating what Zammit had said to Pitts. Although Smith in his affidavit conclusorily characterizes Nicholas's requests as harassment, "conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden in a motion for summary judgment." Ramsey v. Henderson, 286 F.3d 264, 269 (5th Cir. 2002) (quotation omitted).

Moreover, Smith's allegation in his affidavit that the threat from Zammit was physical is contradicted by his own sworn testimony that he did not perceive the threat as physical, but as a threat to his employment. Defendant's Exh. 8, Smith deposition, at pp. 76-77. A "nonmovant cannot defeat a motion for summary judgment by submitting an affidavit which directly contradicts, without explanation, his previous testimony." Albertson v. T.J. Stevenson & Co., 749 F.2d 223, 228 (5th Cir. 1984); accord Copeland

v. Wasserstein, Perella & Co., Inc., 278 F.3d 472, 482 (5th Cir. 2002); S.W.S. Erectors, Inc. v. Infax, Inc., 72 F.3d 489, 495 (5th Cir. 1996).

None of plaintiff's evidence is sufficient to create a triable, material fact issue as to the second prong of plaintiff's prima facie case of retaliation because nothing adverse happened to Smith. Plaintiff's "subjective belief [that] the incidents were retaliatory, without more, is not sufficient to survive summary judgment." Peace v. Harvey, No. 06-50402, 2006 WL 3068677, at *2 (5th Cir. Oct. 26, 2006) (citing Byers v. Dallas Morning News, Inc., 209 F.3d 419, 427 (5th Cir. 2000)). Accordingly, defendant is entitled to summary judgment in his favor as a matter of law as to this claim.

   D.   Plaintiff's Race Discrimination Claim

Plaintiff's claims of race discrimination are based on the same incidents described above. To establish a prima facie case of race discrimination, plaintiff must prove that he (1) was a member of a protected class, (2) was qualified for the position, (3) was not hired, was dismissed or suffered other adverse employment action and (4) was replaced by an individual of a different race, or that his employer treated similarly situated individuals of a different race more favorably than it treated him. McDonnell Douglas, 411 U.S. at 802; Urbano v. Continental Airlines, Inc., 138 F.3d 204, 206 (5th Cir. 1998); Ward v. Bechtel Corp., 102 F.3d 199, 202 (5th Cir. 1997); Smith v. Wal-Mart Stores (No. 471), 891 F.2d 1177, 1179 (5th Cir. 1990).

The Secretary again argues that plaintiff cannot establish the third prong of his prima facie case, that of an adverse employment action.

> [The Fifth Circuit] has a strict interpretation of the adverse employment element of [plaintiff's] prima facie intentional discrimination case. Under Title VII principles, . . . an employment action that does not affect job duties, compensation, or benefits is not an adverse employment action. Rather, an adverse employment action consists of <u>ultimate employment decisions</u> such as hiring, granting leave, discharging, promoting, and compensating. A demotion also qualifies as an ultimate employment decision under Title VII.

Pegram v. Honeywell, Inc., 361 F.3d 272, 282 (5th Cir. 2004) (quotations, citation and footnote omitted) (emphasis in original).

The Supreme Court's decision in White addressed only the standard for proving an adverse employment action in a retaliation case. The Fifth Circuit's standard for an adverse employment action in a discrimination claim remains unchanged. See Pryor v. Wolfe, 196 Fed. Appx. 260, 2006 WL 2460778, at *2 (5th Cir. Aug. 22, 2006) (applying "ultimate employment decisions" standard to plaintiff's discrimination claim and White standard to plaintiff's retaliation claim); see also Cassey v. Coca-Cola Enters., No. 05-0152, 2006 WL 3862005, at*4 n.6 (W.D. La. Dec. 29, 2006) (James, J.) (finding that White standard does not apply to discrimination claim) (citing Pryor, 2006 WL 2460778, at *2); Rico-Sanz v. State, No. 04-693-JJB-DL, 2006 WL 3147730, at *7, *13 (M.D. La.

Oct. 23, 2006) (Brady, J.) (applying "ultimate employment decisions" standard to plaintiff's discrimination claim and White standard to plaintiff's retaliation claim).

When "the evidence produces no objective showing of a loss in compensation, duties, or benefits, . . . that evidence is insufficient to establish an adverse employment action." Pegram, 361 F.3d at 282. Smith has produced no such evidence.

Accordingly, Smith cannot establish a prima facie case of discrimination and defendant is entitled to summary judgment in his favor on this claim.

E.  Plaintiff's Hostile Environment Claim

Smith alleges that the same incidents described above created a racially hostile work environment.

> In order to establish a hostile working environment claim, [plaintiff] must prove: (1) she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment; (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action. For harassment on the basis of race to affect a term, condition, or privilege of employment, as required to support a hostile work environment claim under Title VII, it must be "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."
> In determining whether a workplace constitutes a hostile work environment, courts must consider the following circumstances: the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.

Ramsey v. Henderson, 286 F.3d 264, 268 (5th Cir. 2002) (quoting Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993)) (additional citations omitted).

Smith again fails to provide evidence sufficient to establish a prima facie case of race-based hostile environment. The two isolated incidents of which Smith complains, even if they had some racial nexus (which he has submitted no evidence to establish), cannot be considered severe or pervasive enough to alter the conditions of his employment and create an abusive working environment. The Fifth Circuit has found far more racially charged incidents not severe or pervasive enough to support a hostile environment claim. See, e.g., Pickens v. Shell Tech. Ventures, Inc., 118 Fed. Appx. 842, 2004 WL 2980291, at *6-7 (5th Cir. 2004) (employer's Christmas skit that included white "elves" in black-face and racially insensitive comments by co-employees directed specifically to the plaintiff); Hayatdavoudi v. University of La., 240 F.3d 1073, 2000 WL 1835143, at *1 (5th Cir. 2000) (co-employee's references to Iranian-American plaintiff as "Ayatolla Asodollah" and supervisor's comment that plaintiff was like "the dogs in the desert, howling as the caravan goes by"); Mosley v. Marion County, 111 Fed. Appx. 726, 2004 WL 2244260, at *1 (5th Cir. 2004) ("three incidents involving the use of racial slurs"). By comparison to the factual circumstances in these cases, plaintiff's evidence falls far short of establishing a racially hostile working environment.

Accordingly, defendant is entitled to summary judgment in his favor on plaintiff's hostile environment claim.

## CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that defendant's motion for summary judgment is GRANTED and that plaintiff's claims are DISMISSED WITH PREJUDICE, plaintiff to bear all costs of this proceeding.  Judgment will be entered accordingly.

New Orleans, Louisiana, this  27th  day of February, 2007.

*[signature]*

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE